IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:11-CV-650-D

| | |
|---|---|
| RAHAMANKHAN TOBACCO ENTERPRISES PVT. LTD., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) **ORDER** ) |
| EVANS MACTAVISH AGRICRAFT, INC., | ) ) ) |
| Defendant. | ) |

Evans MacTavish Agricraft, Inc. ("Evans MacTavish") sold a tobacco press to Rahamankhan Tobacco Enterprises Pvt. LTD ("RTE") and installed it. On November 15, 2011, RTE filed a complaint alleging that Evans MacTavish breached the contract concerning the tobacco press and requesting a declaratory judgment [D.E. 1]. On April 2, 2013, Evans MacTavish filed an amended answer and asserted counterclaims for breach of contract, fraud, and violation of the Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1 ("UDTPA") [D.E. 45]. On April 23, 2013, RTE moved to dismiss Evans MacTavish's counterclaims [D.E. 47–48]. See Fed. R. Civ. P. 12(b)(6). On May 13, 2013, Evans MacTavish responded in opposition [D.E. 49].

Evans MacTavish has plausibly alleged a counterclaim for breach of contract and that counterclaim survives the motion to dismiss. However, Evans MacTavish has failed to state a claim for fraud or a violation of the UDTPA. Accordingly, those counterclaims are dismissed.

I.

Evans MacTavish, a North Carolina corporation based in Wilson, North Carolina, manufactures and distributes tobacco processing equipment. Countercl. [D.E. 45] ¶ 1. RTE, an

Indian corporation based in Guntur, Andhra Pradesh, India, purchases, processes, packages, and exports numerous varieties of Indian tobacco. Id. ¶ 2.

In 2009, RTE approached Evans MacTavish to discuss purchasing a complete tobacco threshing line, including a lamina press. Id. ¶ 3. A threshing line processes raw tobacco by separating the tobacco lamina from the stems, adjusting the moisture content of the tobacco, and packing the tobacco for resale to cigarette manufacturers. Id. Evans MacTavish planned to manufacture the threshing line in Wilson, North Carolina, and assemble it in RTE's facility in Guntur, India. Id. Evans MacTavish had never built a lamina press before, as RTE knew. Id. ¶ 4. Evans MacTavish told RTE that its lamina press would be able to process up to 45 cases per hour of proper tobacco product, which Evans MacTavish defines as "good quality flu-cured Virginia tobacco lamina at the appropriate uniform moisture and temperature levels, and with the stem and scrap removed." Id.

In September 2009, Evans MacTavish and RTE entered into a contract. Id. ¶ 5. In the contract, RTE agreed to pay $6,578,896 for the manufacture, sale, and installation of the threshing line and lamina press, including $629,908 for the lamina press itself. Id. RTE was also responsible for providing labor, tools and equipment, and some technological support for the installation process. Id. ¶ 7.

In late summer and early fall of 2010, Evans MacTavish began shipping components of the threshing line and lamina press to RTE's facility in Guntur, and Evans MacTavish employees and contractors began assembly. Id. ¶ 6. Evans MacTavish alleges that RTE took a number of unapproved actions that negatively impacted the line's functioning, including unilaterally changing the threshing line's design, beginning operation of the threshing line and lamina press before completing installation and adjustments, and using improper tobacco. Id. ¶¶ 8–10.

2

RTE complained about the performance of the lamina press. Id. ¶ 10. In response, in mid-March 2011, Evans MacTavish retrofitted the lamina press. Id. ¶ 11. Later that month, RTE demanded that Evans MacTavish provide a commitment letter guaranteeing that the lamina press would meet certain production levels or else Evans MacTavish would remove the lamina press and refund the purchase price. Id. ¶ 12. At the same time that RTE requested a retrofit and commitment letter from Evans MacTavish, RTE began negotiating with an Italian manufacturer for a replacement press. Id. ¶ 13. By mid-May 2011, RTE had contracted to purchase a replacement press. Id. Evans MacTavish was not aware of these negotiations or the resulting contract. Id. On June 23, 2011, RTE formally rejected the lamina press. Compl. [D.E. 1] ¶¶ 100, 103. This lawsuit followed.

In reviewing a motion to dismiss under Rule 12(b)(6), the court must determine whether the counterclaim is legally and factually sufficient. See Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 132 S. Ct. 1327 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). A court need not accept a counterclaim's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009); see Iqbal, 556 U.S. at 678–79. However, the court "accepts all well-pled facts as true and construes these facts in the light most favorable to the [claimant] in weighing the legal sufficiency of the [counterclaim]." Nemet Chevrolet, 591 F.3d at 255. The parties agree that North Carolina law governs this dispute. See, e.g., Compl. ¶¶ 119, 124–131; Countercl. ¶ 32.

In deciding whether to grant RTE's motion to dismiss, the court first must determine whether Evans MacTavish has stated sufficient facts to support a tort claim rather than simply breach of contract. North Carolina law "does not permit a party to transmute a breach of contract claim into

3

a tort or UDTPA claim for extraordinary damages because awarding punitive or treble damages would destroy the parties' bargain and force the defendant to bear a risk it never took on." PCS Phosphate Co. v. Norfolk S. Corp., 559 F.3d 212, 224 (4th Cir. 2009); see Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 347 (4th Cir. 1998). "[A] tort action does not lie against a party to a contract who simply fails to properly perform the terms of the contract . . . when the injury resulting from the breach is damage to the subject matter of the contract." Spillman v. Am. Homes of Mocksville, Inc., 108 N.C. App. 63, 65, 422 S.E.2d 740, 741–42 (1992). Even an intentional breach is insufficient to support a tort claim. See Birtha v. Stonemor, N.C., LLC, 727 S.E.2d 1, 10 (N.C. Ct. App. 2012); Bob Timberlake Collection, Inc. v. Edwards, 176 N.C. App. 33, 42, 626 S.E.2d 315, 323 (2006). Rather, a claimant must allege an independent, identifiable tort containing an aggravating element such as malice or recklessness in order to recover punitive damages. See Strum v. Exxon Co., 15 F.3d 327, 330–31 (4th Cir. 1994).

Although Evans MacTavish has alleged a breach of contract, it has not plausibly alleged substantial aggravating factors that would make the alleged breach itself a basis for its counterclaims for fraud and a violation of the UDTPA. See Broussard, 155 F.3d at 346–47; Strum, 15 F.3d at 330–31. In opposition to this conclusion, Evans MacTavish cites RTE's negotiation and formation of a separate contract for another lamina press without Evans MacTavish's knowledge. Evans MacTavish contends that this conduct constitutes "substantially separate, distinct, and therefore identifiable independent facts that differ from the facts that the contract dispute is founded upon." Capital Factors, Inc. v. The Fryday Club, Inc., 209 F. Supp. 2d 583, 585 (W.D.N.C. 2002).

The argument fails. RTE's alleged conduct does not convert this contract dispute into a tort dispute. Rather, even accepting the allegations as true, Evans MacTavish's allegations relate to the issue of damages. Depending on the outcome of the contract dispute, RTE's acts may have either

4

mitigated its own damages or aggravated Evans MacTavish's damages. Evans MacTavish's allegations directly relate to the performance (or non-performance) of its contract with RTE and should be resolved under the law of contract. See, e.g., Bon Aqua Int'l, Inc. v. Second Earth, Inc., No. 1:10CV169, 2013 WL 357469, at *14 (M.D.N.C. Jan. 29, 2013) (unpublished); Wireless Commc'ns, Inc. v. Epicor Software Corp., No. 3:10CV556-DSC, 2011 WL 90238, at *5–6 (W.D.N.C. Jan. 11, 2011) (unpublished); ACS Partners, LLC v. Americon Grp., Inc., No. 3:09cv464-RJC-DSC, 2010 WL 883663, at *7–8 (W.D.N.C. Mar. 5, 2010) (unpublished); HPS Techs., Inc. v. E.I. Du Pont De Nemours & Co., No. 1:06CV1061, 2009 WL 3434280, at *10 (M.D.N.C. Oct. 20, 2009) (unpublished), adopted in relevant part, 2010 WL 2998841 (M.D.N.C. July 26, 2010) (unpublished); Mecklenburg Cnty. v. Nortel Gov't Solutions, Inc., No. 3:07-cv-00320-GCM, 2008 WL 906319, at *4–5 (W.D.N.C. Apr. 1, 2008) (unpublished).

Alternatively, even if Evans MacTavish has alleged facts that sound in tort, the fraud and UDTPA counterclaims still fail. Simply put, Evans MacTavish has failed to plausibly allege all requisite elements for these counterclaims.

To state a claim for fraud, a claimant must sufficiently allege (1) a false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party. Forbis v. Neal, 361 N.C. 519, 526–27, 649 S.E.2d 382, 387 (2007); Rowan Cnty. Bd. of Educ. v. U.S. Gypsum Co., 332 N.C. 1, 17, 418 S.E.2d 648, 658 (1992). Evans MacTavish alleges that RTE acted fraudulently by (1) negotiating and entering a contract for a replacement press and (2) not telling Evans MacTavish about the contract. Because RTE made no false representations to Evans MacTavish about the other contract, the counterclaim for fraud turns on RTE's failure to tell Evans MacTavish about the negotiations and resulting contract.

5

To plead fraud by omission, a claimant must plausibly allege:

(1) the relationship or situation giving rise to the duty to speak, (2) the event or events triggering the duty to speak, and/or the general time period over which the relationship arose and the fraudulent conduct occurred, (3) the general content of the information that was withheld and the reason for its materiality, (4) the identity of those under a duty who failed to make such disclosures, (5) what those defendant(s) gained by withholding information, (6) why [claimant's] reliance on the omission was both reasonable and detrimental, and (7) the damages proximately flowing from such reliance.

Suntrust Mortg., Inc. v. Busby, 651 F. Supp. 2d 472, 484 (W.D.N.C. 2009). The party that allegedly failed to speak must have had a duty to disclose the information, such as when there is a "relationship of trust and confidence between the parties." Eli Research, Inc. v. United Commc'ns Grp., LLC, 312 F. Supp. 2d 748, 759 (M.D.N.C. 2004). Contracting parties in a commercial transaction are not in a relationship of trust and confidence. See Broussard, 155 F.3d at 347–48; Synovus Bank v. Coleman, 887 F. Supp. 2d 659, 671–76 (W.D.N.C. 2012); Cardiovascular Diagnostics Inc. v. Boehringer Mannheim Corp., 985 F. Supp. 615, 619–20 (E.D.N.C. 1997), aff'd, 185 F.3d 882 (table), 1999 WL 107009 (Fed. Cir. 1999) (unpublished); Highland Paving Co. v. First Bank, 742 S.E.2d 287, 292–93 (N.C. Ct. App. 2013); Branch Banking & Trust Co. v. Thompson, 107 N.C. App. 53, 61, 418 S.E.2d 694, 699 (1992). Moreover, a party to a commercial transaction has no duty to tell the other party that it is negotiating with a third party. See Computer Decisions, Inc. v. Rouse Office Mgmt. of N.C., Inc., 124 N.C. App. 383, 389, 477 S.E.2d 262, 265 (1996). Evans MacTavish has not plausibly alleged that it was in a relationship of trust and confidence with RTE or that RTE had a duty to speak. Thus, Evans MacTavish has failed to plausibly allege that RTE had a duty to tell Evans MacTavish about its negotiations and contract and Evans MacTavish's fraud counterclaim fails.

To state a claim under the UDTPA, a claimant must allege (1) an unfair or deceptive act or

6

practice (2) in or affecting commerce (3) which proximately caused injury to the plaintiff or his business. See N.C. Gen. Stat. § 75-1.1; Walker v. Fleetwood Homes of N.C., Inc., 362 N.C. 63, 71–72, 653 S.E.2d 393, 399 (2007); Dalton v. Camp, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001). The conduct must be immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. See, e.g., Gilbane Bldg. Co. v. Fed. Reserve Bank, 80 F.3d 895, 902 (4th Cir. 1996); Branch Banking & Trust Co., 107 N.C. App. at 61, 418 S.E.2d at 700. An act is deceptive if it has a tendency or capacity to deceive. Dalton, 353 N.C. at 656, 548 S.E.2d at 711; Marshall v. Miller, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981). An act is unfair "if it offends established public policy," "is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," or "amounts to an inequitable assertion of . . . power or position." Carcano v. JBSS, LLC, 200 N.C. App. 162, 172, 684 S.E.2d 41, 50 (2009) (quotation omitted) (emphasis removed); see Gilbane Bldg. Co., 80 F.3d at 902. "Whether an act or practice is unfair or deceptive under the UDTPA is a question of law for the court." Kelly v. Ga.–Pac., LLC, 671 F. Supp. 2d 785, 798–99 (E.D.N.C. 2009) (collecting cases).

A breach of contract, even if intentional, is insufficient to state a UDTPA claim. Rather, the claimant must plausibly allege egregious or aggravating circumstances. See Phelps Staffing, LLC v. C.T. Phelps, Inc., 740 S.E.2d 923, 928–29 (N.C. Ct. App. 2013); McKinnon v. CV Indus., Inc., 213 N.C. App. 328, 340, 713 S.E.2d 495, 504 (2011); Haynes v. B & B Realty Grp., Inc., 179 N.C. App. 104, 112, 633 S.E.2d 691, 696 (2006). "In most cases, there is nothing unfair or deceptive about freely entering a transaction on the open market." Bumpers v. Cmty. Bank of N. Va., 747 S.E.2d 220, 228 (N.C. 2013). Looking for alternatives to a current contract without notifying the other contracting party is not itself unfair or deceptive. See, e.g., Tar Heel Indus., Inc. v. E.I. duPont de Nemours & Co., 91 N.C. App. 51, 56–57, 370 S.E.2d 449, 452 (1988). Evans MacTavish's

7

allegations do not include the "substantial aggravating circumstances" necessary to support its UDTPA counterclaim. See, e.g., PCS Phosphate Co., 559 F.3d at 224; Broussard, 155 F.3d at 346–47; Branch Banking & Trust Co., 107 N.C. App. at 62, 418 S.E.2d at 700. Thus, Evans MacTavish has failed to plausibly allege its UDTPA counterclaim.

Alternatively, Evans MacTavish has failed to plausibly allege that it suffered damages as a result of RTE's alleged fraud and unfair and deceptive trade practices. A claimant must allege actual damages in claims for fraud and violations of the UDTPA. See Bumpers, 747 S.E.2d at 227; Simaan, Inc. v. BP Prods. N. Am., Inc., 395 F. Supp. 2d 271, 277 (M.D.N.C. 2005). The damages must proximately flow from the fraud or unfair and deceptive acts. See Bumpers, 747 S.E.2d at 227; Nakell v. Liner Yankelevitz Sunshine & Regenstreif, LLP, 394 F. Supp. 2d 762, 767 (M.D.N.C. 2005); Carcano, 200 N.C. App. at 176, 684 S.E.2d at 53; Wall v. Fry, 162 N.C. App. 73, 79, 590 S.E.2d 283, 287 (2004). Evans MacTavish alleges that it was damaged by continuing to make alterations to the lamina press while RTE was contracting for a replacement. Countercl. ¶ 26. However, the damages to support a claim for fraud or a violation of the UDTPA cannot include previous obligations. See, e.g., Food Lion, Inc. v. Capital Cities/ABC, Inc., 194 F.3d 505, 512–14 (4th Cir. 1999); Comer v. Person Auto Sales, Inc., 368 F. Supp. 2d 478, 486–87 (M.D.N.C. 2005). Evans MacTavish concedes that it was obligated to make these alterations to the lamina press pursuant to its contract with RTE. See [D.E. 49] 7–8. Thus, Evans MacTavish has not plausibly alleged that the expenses incurred altering the press were anything other than the fulfillment of Evans MacTavish's contractual obligations. See Int'l Designer Transitions, Inc. v. Faus Grp., Inc., 663 F. Supp. 2d 432, 445 (E.D.N.C. 2009). Because Evans MacTavish has not plausibly alleged damages proximately caused by RTE's alleged fraud or unfair and deceptive acts, the fraud and UDTPA counterclaims fail.

II.

In sum, RTE's motion to dismiss [D.E. 47] is GRANTED in part and DENIED in part. Evans MacTavish's breach of contract counterclaim survives, but its fraud and UDTPA counterclaims are DISMISSED.

SO ORDERED. This 1 day of October 2013.

JAMES C. DEVER III
Chief United States District Judge